## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE LEWIS-ABDULHAADI
12 South Robinson Street
Philadelphia, PA 19139,

        Plaintiff,

     v.

UNION SECURITY INSURANCE CO.
2323 Grand Blvd
Kansas City, MO 64108

and

SUN LIFE ASSURANCE COMPANY OF
CANADA
1 Sun Life Executive Park
Wellesley Hills, MA 02481

and

MERAKEY USA
620 Germantown Pike
Lafayette Hill, PA 19444,

        Defendants.

Case No.  21-cv-03805-WB

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Antoinette Lewis-Abdulhaadi ("Plaintiff"), through her undersigned counsel, alleges as follows.

## INTRODUCTION

1.　　This is an action brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*., by Plaintiff on behalf of a Class of persons who are participants and beneficiaries in ERISA-covered welfare plans ("the Plans") that provide dependent child life insurance benefits insured by Sun Life Assurance Company of

Canada ("Sun Life") or Union Security Insurance Company ("USIC") against Defendants for their breaches of fiduciary duty, and other violations of ERISA.

2. For years, Defendants Sun Life and USIC (which sold its employee benefits book of business to Sun Life), which are or were fiduciaries of these Plans, have collected premiums from participants in the Plans to insure their children past the age at which the children are eligible for coverage under the Plans. Utilizing a strategy whereby it claims not to review the age of the children it purports to insure, Defendant Sun Life accepts the insurance premiums for children who are no longer eligible for coverage until a claim is made for payment of benefits (i.e., when the child unfortunately dies).  At that point, Defendant Sun Life denies coverage and returns the premiums (sometimes without interest or earnings).

3. At least in the case of the Merakey USA Welfare Benefit Plan ("the Merakey Plan") in which Plaintiff was a participant, Sun Life apparently did not even provide a copy of its Policy to the employer/Plan Administrator and the terms of the Merakey Plan were not provided to the participants.  But Plaintiff and other members of the Class do receive confirmation leading them to believe that their children are insured with dependent life insurance coverage.

4. Contrary to their fiduciary obligations, Defendants Sun Life and USIC do not disclose to the participants (or apparently even to the Plan Administrator of the Plans who is collecting these payments on behalf of the insurers) that they are paying premiums for non-existent coverage or of their rights to convert the group dependent coverage into an individual policy that would provide coverage. Instead, Sun Life and USIC simply collect the premiums until they are caught.

5. Among the remedies for these breaches and violations, this action seeks (a) a determination that Defendants breached their fiduciary duties and violated ERISA by collecting

and/or accepting such premiums for children who ceased to be eligible for coverage and an injunction preventing such breaches and violations, (b) an accounting from Sun Life and USIC of the premiums paid for life insurance on dependent children, (c) a surcharge against Sun Life and USIC to pay benefits for any dependent children for which it accepted premiums where the children died even if the children exceeded the age of insurability under the Plans and to reform the group insurance policies insuring the Plans ("the Policies") as necessary, (d) to impose a constructive trust over all premiums Sun Life and USIC received for children who no longer qualified as Dependent Children under the Policies and disgorgement of all profits on those premiums.

## THE PARTIES

**Plaintiff**

6.      Plaintiff Antoinette Lewis-Abdulhaadi is an employee of Merakey USA and a participant in the Merakey Plan.  As a result of her employment with Merakey, Plaintiff is and has been a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) in the Merakey Plan.

**Defendants**

7.      Defendant Merakey USA ("Merakey") is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Lafayette Hill, Montgomery County, Pennsylvania. Merakey USA acquired The Association for Independent Growth in or about 2008, and since that time The Association for Independent Growth now operates under the name Merakey IDD Philadelphia as a Merakey subsidiary. Merakey and Merakey IDD are collectively referred to as Merakey. Merakey USA is sponsor of the Merakey USA Welfare Benefit Plan within the meaning of ERISA § 3(16)(B) and the "administrator" of the Merakey USA Welfare Benefit Plan within the meaning of ERISA §

3(16)(A).  *See* 29 U.S.C. § 1002(16)(A) and (B).  Merakey is a Plan fiduciary pursuant to Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

8.     Union Security Insurance Company ("USIC") is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in Kansas City, Missouri and is authorized to conduct insurance business in the United States, including the Commonwealth of Pennsylvania. USIC formerly insured the dependent life insurance benefits payable under the Merakey Plan and was at one time responsible for adjudicating claims for Merakey Plan benefits. Until it sold its employee benefits business to Sun Life in 2016, USIC also insured the dependent life insurance payable under thousands of other ERISA-covered welfare plans offering dependent life insurance benefits payable under those Plans. Under of each of the those Plans, including the Merakey Plan, USIC was responsible for adjudicating claims for Plan benefits and received premiums for providing those benefits. As a result of those activities and because it has and exercises discretionary control over Plan assets, USIC was a fiduciary, within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), of the Merakey Plan and each of the other ERISA-covered welfare Plans for which USIC insures or insured the dependent life insurance benefits during the time that USIC was responsible for adjudicating Plan benefits.

9.     Sun Life Assurance Company of Canada ("Sun Life"), with an office located in Wellesley Hills, Massachusetts, is a duly organized corporate entity or other business association authorized to conduct insurance business in the United States, including the Commonwealth of Pennsylvania. Sun Life insures the dependent life insurance benefits payable under the Merakey Plan. Sun Life also insures the dependent life insurance payable under thousands of other ERISA-covered welfare plans offering dependent life insurance benefits payable under those Plans (including those that it acquired from USIC). Under of each of the those Plans, including the

Merakey Plan, Sun Life is responsible for adjudicating claims for Plan benefits and receives premiums for providing those benefits. As a result of those activities and because it has and exercises discretionary control over Plan assets, Sun Life is a fiduciary, within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), of the Merakey Plan and each of the other ERISA-covered welfare Plans for which Sun Life insures (and/or for the former USIC Plans), the dependent life insurance benefits.

**Relevant Non-Parties**

10.     The Merakey Plan  is an ERISA-regulated "employee welfare benefit plan" as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1).  The Plan offers various welfare benefits to Merakey Plan participants, including dependent life insurance benefits.  According to the Plan's most recent Form 5500 Annual Report, as well as prior Form 5500 Annual Reports, the Sun Life Group Policy remains a part of the Merakey Plan and covered approximately 69 persons in 2020, 79 persons in 2019, 83 persons in 2018, and 99 persons in 2017.

11.     The term "Plan Administrators" refers to Defendant Merakey and the Administrators within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), of the ERISA-covered welfare Plans that offered or provided dependent child life insurance insured by USIC or Sun Life under the Policies in which the other Class Members participated.

**JURISDICTION AND VENUE**

12.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

13.     Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) because, at all relevant times, the Merakey Plan was and is administered in this District, the breaches and violations giving rise to the claims occurred in this District, and Defendants may be found in this District.  Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and at least some of Defendants reside in this District.

14.     The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Division, and Merakey is domiciled in this District, and Defendants USIC and Sun Life regularly transact business in this District and Division.  This Court also has personal jurisdiction over Defendants because Defendants transact business in and have significant contacts within this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons ("the Class") defined as follows:

> All participants in an ERISA-covered welfare plan that is insured by Sun Life Assurance Company of Canada or Union Security Insurance Company who had children enrolled in the dependent life insurance benefit program after the age at which the children no longer met the definition of dependent child and the beneficiaries of such participants.

16.     Excluded from the Class are persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of any Plan funded or insured by a group life insurance policy issued by USIC or Sun Life, including the Merakey Plan or persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of any other employee

welfare benefit Plan to which a USIC or Sun Life insurance policy, contract, certificate, or agreement is offered.

**Impracticability of Joinder**

17.     The members of the Class are so numerous that joinder of all members is impracticable. According to press releases issued by Defendant Sun Life, "[i]n the United States, Sun Life is one of the largest group benefits providers, serving more than 60,000 employers in small, medium and large workplaces across the country." Sun Life's "broad portfolio of insurance products" includes life insurance and upon information and belief, Sun Life provides group life insurance for the vast majority of those more than 60,000 employers and for most of those employers, the life insurance is provided through an ERISA-covered plan. According to Sun Life's press releases, Sun Life Assurance Company of Canada (Wellesley Hills, Mass.) issues group insurance policies in every state "except in New York, where policies are issued by Sun Life and Health Insurance Company (U.S.) (Lansing, Mich.)."  As a result, the number of Class Members are estimated to be in thousands and geographically dispersed across the United States.

**Commonality**

18.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts or their failure to act. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

>       a.      Whether Defendants caused the Plans to engage in prohibited transactions under ERISA by causing or permitting Sun Life and USIC to receive, retain and use premiums to which they were not entitled;

      b.     Whether Defendants breached their duties by failing to disclose information to participants about the payment of premiums for coverage that did not exist and their rights to convert the group life insurance to an individual policy;

      c.     Whether Defendants Sun Life and USIC breached their fiduciary duties to participants of the Plans by retaining premiums to which they were not entitled;

      d.     Whether the Defendants Sun Life and USIC knowingly participated in prohibited transactions or in fiduciary breaches by the Plan Administrators or are liable as gratuitous transferees;

      e.     The appropriate relief to remedy Defendants' fiduciary breaches, violations and/or prohibited transactions.

**Typicality**

19.    Plaintiff's claims are typical of those of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiff, on behalf of the Class and the Plans, alleges that Defendants breached their fiduciary duties, engaged in prohibited transactions, or otherwise violated ERISA in connection with the payment of premiums to which Sun Life and USIC were not entitled, which Sun Life and USIC accepted, retained and used for their own purposes, and failed to disclose to Plaintiff and the Class (a) that the children for which they were paying premiums no longer met the definition of Dependent Child, that (b) Plaintiff and the Class were entitled to convert the coverage to an individual policy or (c) that Sun Life and USIC were retaining premiums for coverage that did not exist. Plaintiff, like other participants in the Class, paid those premiums which they would either not have paid or would have paid toward an individual life insurance policy.

8

**Adequacy**

20.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

21.     Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

22.     Defendants do not have any unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

23.     Plaintiff is represented by counsel with experience in ERISA and class actions.

**Rule 23(b)(1)**

24.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. As the terms of the Sun Life Policies and USIC Policies were materially the same across the Plans and their practices were uniform across the Plans, their duties and obligations were the same for all participants in all the Plans for which Sun Life and USIC provided benefits. Resolving whether Defendants fulfilled their fiduciary obligations to the Plans, engaged in prohibited transactions with respect to the Plans would, as a practical matter, be dispositive of the interests of the other participants in the Plans even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

25.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA. As the primary issues in this case involve the adequacy of disclosures provided

to participants and Sun Life and USIC's ability to retain premiums to which they were not entitled, conflicting interpretations of the same practices and ERISA-mandated disclosures create the risk of establishing incompatible standards of conduct for Sun Life and USIC as well as other fiduciaries of those Plans. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plans.

**Rule 23(b)(2)**

26.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA with respect to uniform practices across the Plans.

27.     The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Rule 23(b)(3)**

28.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by paying premiums for coverage that did not exist under the terms of the Plans and Policies and failing to receive proper disclosures

including as to their rights to convert the group dependent life insurance coverage to an individual life insurance policy.

29.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. A single proceeding rather than multiple proceedings will efficiently resolve the issues in this litigation. The amount to be recovered by individual Class members is small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties and liability regarding the Plans.

30.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a.     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b.     No other litigation concerning this controversy has been filed by any other members of the Class.

c.     This District is a desirable location for concentrating the litigation because for reasons that include (but are not limited to) the following: (i) Merakey USA is headquartered in this District, (ii) the Plan in which Plaintiff participated is administered in this District, (iii) as Sun Life and USIC issue Policies to Plans in most of the United States, there is no one District that is convenient to most Class Members.

d.     There are no difficulties in managing this action as a class action.

## FACTUAL ALLEGATIONS

**Background of Plaintiff**

31.     Plaintiff was hired by The Association for Independent Growth in 2002.  When Merakey USA acquired The Association for Independent Growth, Plaintiff became a Merakey employee.

32.     Plaintiff had two sons: Steven Mosely and Stefan Mosely.  Steven Mosely was born on March 31, 1986.  Stefan Mosely was born October 15, 1988.

33.     When her children were young, Plaintiff enrolled both of her sons in the optional dependent life insurance benefit program Merakey and The Association for Independent Growth offered through the Merakey Plan for the maximum amount payable: $10,000 per Dependent Child.

34.     The only disclosure Plaintiff may have received regarding her dependent life insurance benefits was confirmation that she had enrolled her children in such programs during her annual open enrollment and the cost of such coverage continued to be deducted from her paychecks.

**USIC's & Sun Life Issue Dependent Life Insurance & Relevant Terms of the Policies**

35.     USIC issued group life insurance policy G 5,255,143 ("the USIC Group Policy") to The Association for Independent Growth at least as early as August 2008. Upon information and belief, the USIC Group Policy is materially similar to thousands of other policies that USIC issued to thousands of other ERISA-covered welfare plans.

36.     On March 1, 2016, Sun Life Financial, the parent company of Sun Life, acquired Assurant Employee Benefits, the employee benefits business of Assurant, Inc., which owns USIC.

37.     Following Sun Life Financial's acquisition of Assurant Employee Benefits, Sun Life issued group policy 913177-001 ("the Sun Life Group Policy") to replace the USIC Group Policy.  Upon information and belief, the Sun Life Group Policy is materially similar to thousands of other policies that Sun Life issued to thousands of other ERISA-covered welfare plans.

*Benefits Available for Dependent Children*

38.     Both the USIC Group Policy and the Sun Life Group Policy provided for voluntary dependent life insurance benefits in the amount of $10,000 per dependent. Upon information and belief, this provision was materially similar if not identical to thousands of other policies issued by Sun Life or USIC to thousands of other ERISA-covered welfare plans.

39.     Under the USIC Group Policy, a Dependent Child is covered to age 19 or to age 25 if he or she is a Full Time Student.  Additionally, a Dependent Child may be covered beyond age 19 if he or she is "unable to earn a living because of physical handicap or mental retardation" and "is chiefly dependent upon the [the Plan participant] for support and maintenance." Upon information and belief, this provision was materially similar if not identical to thousands of other Policies issued by USIC to thousands of other ERISA-covered welfare Plans.

40.     Similarly, under the Sun Life Group Policy, a Dependent Child is covered to age 19, or to age 25 if he or she is a Full Time Student.  Additionally, an unmarried Dependent Child may be covered beyond age 19 if he or she is "incapable of self-sustaining employment because of an intellectual disability, developmental disability or physical handicap" and is "chiefly dependent on [the Participant] for support." Upon information and belief, this provision was materially similar if not identical to thousands of other Policies issued by Sun Life to thousands of other ERISA-covered welfare Plans.

41.     The Sun Life Group Policy also pays a death benefit of up to $10,000 per covered dependent.  Upon information and belief, this provision was materially similar if not identical to thousands of other policies issued by Sun Life to thousands of other ERISA-covered welfare plans.

*Rights to Convert the Group Policies to Individual Life Insurance Policies*

42.     Under the terms of the Sun Life Group Policy and the terms of the USIC Group Policy, once a Dependent Child no longer meets the definition of Dependent Child, the participant has the option within a specified period of time to convert the coverage to an individual life insurance policy. Upon information and belief, this provision is materially similar if not identical to thousands of other policies issued by Sun Life and USIC to thousands of other ERISA-covered welfare plans.

*Incontestability Provisions in the Policies*

43.     An incontestability clause is a provision in an insurance contract that makes the life insurance policy incontestable by the insurer after the policy has been in force for a period of time. Similar to how a statute of limitations bars claims after a period of time, an incontestability clause prohibits the insurance company from contesting the validity of the insurance coverage.

44.     Incontestability clauses have been the norm for over 100 years.  The National Association of Insurance Commissioners Standard Policy Provisions Model Act and the laws based upon it requires that every single life insurance policy contains an incontestable clause.

45.     A typical incontestability clause provides, "Except for nonpayment of premium, we will not contest this contract after it has been in force during the lifetime of the insured for two years from the date of issue."

46.     Eligibility for insurance is a condition of insurance and cannot be contested as it can be easily investigated.

47.     In Pennsylvania, every group policy of life insurance delivered in this commonwealth requires

> A provision that the policy shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue, except for nonpayment of premiums; and that, at the option of the company, provisions relative to disability benefits, and provisions which grant additional insurance specifically against death by accident or accidental means, may also be excepted

40 P.S. § 510(c).

48.     Incontestability clauses are required for life insurance policies issued in almost every state (except potentially North Dakota). [1]

49.     The Sun Life Group Policy that applied to Plaintiff has and had an incontestability clause. Upon information and belief, the Sun Life Policies issued to other Class Members (except perhaps those issued in North Dakota) contained a similar incontestability clause.

---

[1] *See,* ALA. CODE § 27-15-4, 27-15-15 (2000); ALASKA STAT. § 21.45.040 (Michie 1962 & West Supp. 2000); ARIZ. REV. STAT. ANN. § 20-1204 (West 1956); ARK. CODE. ANN. § 23-81-105(a) (Michie 1987 & West Supp. 2000); CAL. INS. CODE § 10113.5(West 1954); COLO. REV. STAT. § 10-7-102 (1988); DEL. CODE ANN. tit. 18, § 2908 (1974); FLA. STAT. ANN. § 627.455 (West 2000); GA. CODE ANN. § 33-25-7(Harrison 1994); HAW. REV. STAT. § 431:1OD-102(3) (1968); IDAHO CODE § 41-1905 (Michie 1948); 215 ILL. COMP. STAT. 5/231.1 (1993); IND. CODE ANN. § 27-1-12-6(Michie 1978); IOWA CODE ANN. § 508.28 (West 1949); KAN.STAT. ANN. § 40-420(2) (1964); Ky. REV.STAT. ANN. § 304.15-080 (Michie 1971); LA. REV. STAT. ANN. § 22:170(West 2000); ME. REV. STAT. ANN. tit. 24A, § 2507 (West 1964); MD. CODE ANN., ART. 48A § 390 (1957); MASS. GEN. LAWS ANN. ch. 175, § 132 (West 1958); MICH. COMP. LAWS ANN. § 500.4014 (West 2000); MINN. STAT.ANN. § 62A.04, subd. 2 (West 2000); MONT.CODE ANN. § 33-20-105 (2000); NEB. REV. STAT. § 44-502 (2000); NEV. REV. STAT. ANN. 688A.989 (Michie 1986); N.H. REV. STAT. ANN. § 408:10 (1955); N.J. STAT. ANN. § 17B:25-4 (West 2000); N.M. STAT. ANN. § 59A-20-5 (Michie 1999); N.Y. INS. LAW § 3203 (McKinney 1939); OHIO REV. CODE ANN. § 3911.07 (Anderson 1994); OKLA. STAT. ANN. tit. 36, § 4004 (West 1936); OR. REV. STAT. § 743.168 (1988); 40 P.S. § 510 (West 2000); RI Gen L § 27-4-6.2; S.C. CODE ANN. § 38-63-220 (Law. Co-op. 1976); S.D. CODIFIED LAWS § 38-63-220 (Michie 1978); TENN. CODEANN. § 56-7-301 (1955); TEX. CODEANN. § 56-7-301 (Vernon 2000); UTAH CODE ANN. § 31A-22-403 (2000); VT. STAT. ANN. tit. 8, § 3731 (2000); VA. CODE ANN. §§ 38.2-3107, 38.2-3110 (Michie 1950); WASH. REV. CODE ANN. § 48.23.050 (West 2000); W. VA. CODE § 33-13-4 (2000); Wis. STAT. ANN. § 632.46(2) (West 2000)); WY Stat § 26-16-104 (2020).

**Administration of the Sun Life & USIC Insurance Policies Under the Plans**

50.    Each year, during open enrollment, Plaintiff elected to maintain the dependent life insurance benefit coverage for both of her sons.  Upon information and belief, each Class Member also elected to maintain the dependent life insurance benefit for their children.

51.    Each year, following open enrollment, The Association for Independent Growth and/or Merakey confirmed Plaintiff's benefits election, including Plaintiff's election of dependent life insurance benefit coverage for both of her sons. Upon information and belief, each Class Member also received confirmation of the election of dependent life insurance benefit coverage for their children.

52.    Each year, the Plan Administrator for each Plan (i.e., the employer) – which in the case of Plaintiff was The Association for Independent Growth and/or Merakey – regularly deducted the cost of the optional dependent life insurance program Plaintiff enrolled in from her paycheck.

53.    Once the cost of the dependent life insurance benefits was deducted from the paycheck of the participant, the Plan Administrator of the Plan, typically the employer, (which in the case of Plaintiff, The Association for Independent Growth or Merakey) remitted the funds it deducted from the participant's paycheck to USIC or Sun Life, depending on the Plan year in question, to pay the premium for the optional life insurance benefits payable under the Policy(ies).

54.    The Association for Independent Growth and Merakey had a record of Plaintiff's children's dates of birth.  At no time did either The Association for Independent Growth or Merakey ask Plaintiff how old her children were or otherwise make any effort to confirm whether her dependent children remained covered Dependent Children under the Plan's dependent life insurance programs.

55.     USIC and Sun Life either had a record of the dates of birth of the children of Plaintiff and each Class Member or had the right to request the dates of birth of the children of Plaintiff and each Class Member. But neither USIC nor Sun Life made any effort or exercised any diligence to ascertain whether the children of Plaintiff or the other Class Members qualified as Dependent Children under the terms of the Plans' optional dependent life insurance benefit program. Instead, USIC and Sun Life simply accepted the receipt of insurance premiums for children who were not eligible to be insured under the Policy.  Upon information and belief, USIC and Sun Life (as to other insurers) simply have a practice that once it is discovered that a child was ineligible for coverage (usually when the child dies), USIC and Sun Life simply refund the premiums (often without interest or earnings).

56.     Sun Life acknowledged in a January 16, 2020 letter that because Merakey utilized Sun Life's E-billing service wherein an ERISA plan administrator (which in Plaintiff's case is Merakey), simply sends Sun Life a monthly list with the names of eligible Plan participants and the subsequent elections for each Participant and in turn Sun Life sends them a monthly billing statement. Upon information and belief, most if not all of the Plan Administrators for the Plans of the other Class Members used a similar E-billing service. The Plan Administrators act as the agent of Sun Life.

57.     Merakey, in the case of Plaintiff and the Merakey Plan, and the Plan Administrators with respect to the Plans and the Class, have the actual or apparent authority to bind Sun Life to coverage for Dependent Children life insurance and waive eligibility requirements under the Policies when they accept premium for said children on behalf of Sun Life.

58.     Sun Life's monthly billing statement is generated based on the information it receives from Plan Administrators, such as Merakey, and, even though it could regularly audit

such information, Sun Life does not audit the billing statements against the eligibility requirements under the Policies until such time as a claim is submitted.

59.     When a plan utilizes Sun Life's E-Billing process, Sun Life accepts premiums from ERISA plan administrators and/or ERISA plan participants without exercising a modicum of diligence to confirm whether it is entitled to the premiums it receives.

60.     Sun Life utilizes the E-Billing process described herein across its group life insurance book of business, which generates millions of dollars in annual revenue for Sun Life.

61.     USIC and Sun Life accepted premium payments for optional life insurance benefits paid by Plaintiff and other Class Members through their respective Plans, invested those premium payments, earned return on those payments, and converted them to their own use.

62.     Neither The Association for Independent Growth nor Merakey advised Plaintiff of the age limits applicable to the optional dependent life insurance benefits provided under the USIC Group Policy or the Sun Life Group Policy until after her son Steven Mosely was killed.

63.     Neither The Association for Independent Growth nor Merakey provided Plaintiff with a copy of the Plan's plan document or a summary plan description identifying the age limits applicable to the optional dependent life insurance benefits provided under the Plan, the USIC Group Policy, or the Sun Life Group Policy until after her son Steven Mosely was killed.

64.     Sun Life markets these group life insurance policies to employers as an "off-the-shelf" or "turn-key" products that require minimal actual administration by the employer which is the Plan Sponsor. As a result, Sun Life agrees to create and provide to the employers who are the Plan Sponsors and are or become the Plan Administrators the governing plan documents and the disclosures to be provided to plan participants, including documents that purport to be sufficient to satisfy the requirements of an SPD.

**Plaintiff Seeks Dependent Life Insurance Benefits Under the Policy**

65.     Plaintiff's son Steven Mosely was murdered on August 27, 2018.  Steven Mosely was 32 years old at the time of his death. Plaintiff learned of Steven Mosely's death on August 28, 2018.

66.     While making arrangements for Steven's funeral, on August 29, 2018, Plaintiff assigned a portion of the optional dependent life insurance benefits that she believed were payable on account of Steven's death to the funeral home.

67.     On August 30, 2018, Trinity Funeral Funding faxed a verification of coverage/claim submission to Sun Life.

68.     On August 31, 2018, Plaintiff learned for the first time that neither Steven Mosely nor Stefan Mosely was covered under the Plan because they no longer qualified as Dependent Children due to their age.

69.     Because she believed that her children were properly enrolled as Dependent Children under the Plan's dependent life insurance benefit program, Plaintiff did not seek, much less obtain, alternative life insurance coverage for her children.

70.     Had Merakey, Sun Life, or USIC advised her that her children no longer qualified as Dependent Children under the Policy, Plaintiff could have exercised her option to convert the Policy to an individual life insurance policy.

71.     Prior to Steven Mosely's death, Plaintiff believed that she had insured Steven Mosely's and Stefan Mosely's lives should either child die.

72.     As Sun Life denied coverage under the Policy, Plaintiff was forced to withdraw nearly all of her money from her bank account to cover the cost of Steven Mosely's funeral and burial.

19

73.     Shortly thereafter, Merakey unilaterally refunded to Plaintiff some, but not all, of the dependent life insurance premiums she had paid for her sons, *without* interest.

74.     As a result of the actions of Defendants, Plaintiff was denied the life insurance coverage and benefits to which she thought she had enrolled, she lost the ability to procure alternative coverage on the life of Steven Mosely, she lost the opportunity to pursue a less expensive funeral for her son, and she lost the use of the funds she used to pay for dependent life insurance coverage under the Plan for Steven Mosely and Stefan Mosely after they became too old to qualify for such coverage.

75.     In early 2019, Plaintiff submitted a direct claim for dependent life insurance benefits insuring the life of Steven Mosely to Sun Life.

76.     Sun Life formally denied Plaintiff's claim by way of a letter dated June 5, 2019, because Steven Mosely was no longer a covered Dependent Child at the time of his death due to his age.

77.     Plaintiff appealed Sun Life's denial of her claim in December 2019, and Sun Life denied that appeal in a letter dated January 16, 2020.

78.     Plaintiff submitted a second, voluntary appeal, to Sun Life on July 25, 2020, and Sun Life denied that second appeal on August 10, 2020.

79.     Plaintiff has exhausted her administrative remedies under the Plan and all conditions precedent to filing the present lawsuit have been completed.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**PURSUANT TO ERISA § 404(a), 29 U.S.C. § 1104(a),**
**AGAINST MERAKEY INDIVIDUALLY &**
**AGAINST SUN LIFE AND USIC ON BEHALF OF THE CLASS**

80.     Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as if they were fully restated at length herein.

81.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; (B) with "care, skill, prudence, and diligence;" and (C) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

82.     An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (A) a duty not to misinform; (B) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (C) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

83.     As explained by the Restatement of Trusts (Second) §§ 170 and 173, a fiduciary has a "duty to communicate to the beneficiary" (A) "all material facts in connection with a transaction" involving the fiduciary which the fiduciary "knows or should know" and (B) even in a transaction not involving the fiduciary "material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with the third person with respect to his interest."

84.     As the Plan Administrator, Defendant Merakey knew it had an obligation to know the terms of the Plan and to inform Plaintiff when her children were no longer eligible for dependent life insurance when the premiums were accepted.

85.     In breach of that duty, Defendant Merakey repeatedly represented to Plaintiff that her children were enrolled as Dependent Children under the Plan and that their lives were insured under the Plan's optional dependent life insurance coverage program in the amount of $10,000 each by enrolling her children in said benefits and regularly deducting the premium cost of said benefits from her paycheck.

86.     In breach of that duty, Defendant Merakey failed to inform Plaintiff that she was entitled to convert the policy to an individual life insurance policy.

87.     As a fiduciary of the Plan receiving payments from participants, Defendant USIC had a fiduciary duty to know whether the premium payments that it was receiving were for children that qualified as Dependent Children. As whether the children qualified as Dependent Children under its policy was a material fact, Defendant USIC had a fiduciary duty to affirmatively inform Plaintiff and other members of the Class (A) when they received premium payments for children who did not qualify as Dependent Children and (B) that when the Dependent Child no longer met the definition of Dependent Child that the participant was entitled to convert the policy to an individual life insurance policy.

88.     As a fiduciary of the Plan receiving payments from participants, Defendant Sun Life had a fiduciary duty to know whether the premium payments that it was receiving were for children that qualified as Dependent Children. As whether the children qualified as Dependent Children under its policy was a material fact, Defendant Sun Life had a fiduciary duty to affirmatively inform Plaintiff and other members of the Class (A) when they received premium

payments for children who did not qualify as Dependent Children and (B) that when the Dependent Child no longer met the definition of Dependent Child that the participant was entitled to convert the policy to an individual life insurance policy.

89.    By failing to disclose the terms of the Plan to Plaintiff and, as to USIC and Sun Life, other members of the Class, Defendants breached their fiduciary duties under ERISA 404(a)(1)(A) and (B).

90.    As a result of Defendants' breaches, Plaintiff and other members of the Class were harmed because they were not notified that (1) they were paying premiums for coverage that did not exist, (2) their children did not have life insurance and (3) they had the right to convert the Dependent Child life insurance to an individual policy to provide the dependent coverage that Plaintiff and each Class Member believed was worth paying for through payroll deductions.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**PURSUANT TO ERISA § 404(a), 29 U.S.C. § 1104(a),**
**AGAINST SUN LIFE AND USIC ON BEHALF OF THE CLASS**

91.    Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as if they were fully restated at length herein.

92.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; (B) with "care, skill, prudence, and diligence;" and (C) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

93.    As the Restatement of Trusts (Second) § 170 explains, a fiduciary "is under a duty not to profit at the expense of the beneficiary."  The Restatement of Trusts (Second) § 170 further

explains that a fiduciary "violates his duty to the beneficiary" where "he uses the trust property for his own purposes" including for example to "lend trust money to himself" or even accept a bonus, commission or other compensation "for any action done by him in connection with the administration of the trust."

94.     As the Restatement of Trusts (Second) § 172 explains, a fiduciary is "under a duty to keep accounts showing in detail the nature and amount of trust property and the administration thereof" and if the fiduciary "fails to keep proper accounts, he is liable for any loss" and the "burden of proof is upon the [fiduciary] to show that he is entitled to the credits that he claims."

95.     As a fiduciary of the Plan receiving payments from participants, Defendant USIC had a fiduciary duty to know whether the premium payments that it was receiving were for children that qualified as Dependent Children.  Once USIC knew or should have known that it had received premium payments to which it was not entitled, USIC had an obligation to return those premium payments along with any profits that it made on those premiums. By either retaining the premiums (and/or the profits) or by failing to know whether it had incorrectly received premiums, Defendant USIC breached its fiduciary duties.

96.     As a fiduciary of the Plan receiving payments from participants, Defendant Sun Life had a fiduciary duty to know whether the premium payments that it was receiving were for children that qualified as Dependent Children.  Once Sun Life knew or should have known that it had received premium payments to which it was not entitled, Sun Life had an obligation to return those premium payments along with any profits that it made on those premiums. By either retaining the premiums (and/or the profits) or by failing to know whether it had incorrectly received premiums, Defendant Sun Life breached its fiduciary duties and harmed Plaintiff and other members of the Class.

**COUNT III**
**FAILURE TO PROVIDE A SUMMARY PLAN DESCRIPTION**
**PURSUANT TO ERISA § 102, 104(b)(1), 29 U.S.C. § 1022, 1024(b)(1) &**
**ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)**
**AGAINST MERAKEY BY PLAINTIFF INDIVIDUALLY &**
**AGAINST SUN LIFE ON BEHALF OF THE CLASS**

97.     Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as if they were fully restated at length herein.

98.     ERISA § 101, 29 U.S.C. § 1021 requires every employee benefit plan to have a Summary Plan Description ("SPD").

99.     ERISA § 102(a), 29 U.S.C. § 1022(a), requires that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b)." ERISA § 102(a) also requires that the SPD include the information required by ERISA § 102(b) and "be written in a manner calculated to be understood by the average participant" and "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

100.    ERISA § 102(b) requires that the SPD contain, among other things, a description of "the plan's requirements respecting eligibility for participation or benefits" including the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."

101.    The Department of Labor ("DOL") Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-2, reiterate that an SPD "shall be written in a manner calculated to be understood by the average participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the terms of the plan." 29 C.F.R. § 2520.102-2(a) specifies that an SPD "will usually require . . . the use of clarifying examples and illustrations" to make the terms of the SPD understandable to the average participant.

102.    The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-3(j), require the SPD to include a description of "[t]he plan's requirements respecting eligibility for participation and for benefits," and "also include a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits." DOL Regulation 29 C.F.R. § 2520.102-3(l) requires the SPD to include "a statement clearly identifying circumstances which may result in disqualification, ineligibility or denial . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of" the plan's description of benefits.

103.    ERISA § 102 provides that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in [29 U.S.C.] § 1024(b)." 29 U.S.C. § 1022. In turn, ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), requires that each plan administrator shall furnish to each participant a copy of the plan's SPD and any modification and changes (A) to new participants within 90 days of becoming a plan participant, (B) to every participant in the Plan with an updated copy of an SPD to extent that there had been changes within the last 5 years concerning information described in 29 U.S.C. § 1022, (C) to every participant in the Plan with an updated SPD every tenth year.

104.    As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. §1002(16)(A), the Plan Administrators of the Plans in which each of the Class members were participants or beneficiaries were obligated to comply with ERISA 102, 29 U.S.C. § 1022 and §104(b), 29 U.S.C. §1024(b).

105.    Merakey, in its role as the Plan's Administrator, failed to provide Plaintiff with a copy of the SPD during her employment. By failing to provide an SPD that accurately conveys the

terms of a plan consistent with ERISA § 102 and the DOL Regulations, Merakey violated ERISA § 102 and 104(b) as well as its fiduciary duties under ERISA § 404(a)(1).

106.    While the legal obligation to provide an SPD remains the obligation of the Plan Administrator, as part of providing this group life insurance product, Defendant Sun Life agrees to provide to the Plan Sponsor of each insured plan for delivery to each Employee under the Policy and to include information about participants' benefits, including a summary of the insurance benefits an employee is entitled to and any limitations, exclusions or requirements that may apply. By agreeing to do so, Sun Life assumes responsibility to create and deliver such documents to the Plan Sponsors who are also the Plan Administrators and therefore a fiduciary with respect to the information to be contained in the SPD.

107.    At least as to the Merakey Plan, Defendant Sun Life apparently failed to provide an SPD and/or the Policy to the Plan Administrator so that the Plan Administrator could furnish an SPD to participants.  By failing to provide an SPD or other documents sufficient to describe the terms of the Plan to Merakey and other Plan Administrators covering other Class Members that could be used to provide an SPD, Defendant Sun Life breached its obligations under ERISA § 404(a)(1).

108.    To the extent that Defendant Sun Life did not have a fiduciary obligation to provide an SPD or other documents describing the terms of the Plan to the Plan Administrators so that the Plan Administrators could create and furnish an SPD to participants, Defendant Sun Life knowingly participated in the breaches by the Plan Administrators who failed to provide such an SPD to Class Members because Sun Life knew or should have known that such SPDs and other documents describing the written terms of the Plan were not adequately provided to Class Members.

109.    Plaintiff and other Class Members who did not receive an ERISA-compliant SPD suffered harm as a result of the failure to receive SPD because they were not advised that their children would not be eligible for dependent life insurance benefits after reaching age 19 (or 25, if they were full time students), did not exercise their rights to convert the group insurance to an individual policy, and/or unnecessarily paid premiums for coverage that did not exist.

### COUNT IV
### ENGAGING IN PROHIBITED TRANSACTIONS
### IN VIOLATION OF ERISA § 406(a), 29 U.S.C. § 1106(a)
### AGAINST MERAKEY BY PLAINTIFF INDIVIDUALLY
### AGAINST SUN LIFE, AND USIC ON BEHALF OF THE CLASS

110.    Plaintiff repeats, reaffirms, and realleges the preceding paragraphs of the Complaint as if they were fully restated at length herein.

111.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), prohibits a fiduciary from causing a Plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect "lending of money or other extension of credit between a plan and a party in interest" or a "transfer to, use by or for the benefit of a party in interest, of any assets of the plan."

112.    The Plan Administrators of the Plans for which Sun Life and USIC provided dependent life insurance were fiduciaries of their respective Plans in which Sun Life and/or USIC provided dependent life insurance.

113.    ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include among others: "(A) any fiduciary . . . of such employee benefit plan" and (B) " a person providing services to such plan."

114.    During the time that USIC provided dependent life insurance to the Merakey Plan and each of the other Plans in which Plaintiff and other Class Members were participants, USIC

was and is a "party in interest" as to the Plan as that term is defined in ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

115.    During the time that Sun Life provided dependent life insurance to the Merakey Plan and each of the other Plans in which Plaintiff and other Class Members were participants, Sun Life was and is a "party in interest" as to the Plan as that term is defined in ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

116.    The dependent life insurance premiums paid by Plaintiff and other members of the Class were assets of the respective plans in which Plaintiff and other members of the Class were participants.

117.    Merakey and the other Plan Administrators of the Plans in which Plaintiff and the other members of the Class were participants transferred the dependent life insurance premium payments to USIC and Sun Life when they were not entitled to them due to the age of Plaintiff's children.

118.    The transfer of the dependent life insurance premium payments to USIC and Sun Life when they were not entitled to them constituted an interest-free loan or extension of credit to USIC and Sun Life to which they were not entitled, which they invested for their own account interest free, and from which they profited by investing such sums for their own account.

119.    By collecting and transferring the dependent life insurance premiums to USIC and Sun Life when USIC and Sun Life were not entitled to them and allowing USIC and Sun Life to use those premiums, Merakey and each of the Plan Administrators engaged in a prohibited transaction in violation of ERISA § 406(a).

120.    Defendants Sun Life and USIC either were aware or should have been aware of sufficient facts that the payments by Plaintiff and the other Class Members constituted a prohibited

transaction with parties-in-interest. As parties-in-interest, the Sun Life and USIC are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

121.    Even if Defendants Sun Life or USIC were not aware or should have been aware of sufficient facts that the payments by Plaintiff and the other Class Members constituted a prohibited transaction with parties-in-interest, they were gratuitous transferees of the premiums and are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D) regardless of what they knew or should have known.

**COUNT V**
**ENGAGING IN PROHIBITED TRANSACTIONS IN VIOLATION**
**OF ERISA § 406(b), 29 U.S.C. § 1106(b)**
**AGAINST SUN LIFE AND USIC ON BEHALF OF THE CLASS**

122.    Plaintiff repeats, reaffirms, and realleges the preceding paragraphs of the Complaint as is they were fully restated at length herein.

123.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that:

a fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

124.    USIC was a fiduciary of the Plan at the time it received dependent life insurance premiums from Plaintiff and other Class Members after the date when their respective children became too old to remain covered as Dependent Children under the Plan.

125.    Sun Life was a fiduciary of the Plan at the time it received dependent life insurance premiums from Plaintiff and other Class Members after the date when their respective children became too old to remain covered as Dependent Children under the Plan.

126.    Neither USIC nor Sun life were entitled to the premiums they received for the dependent children after the date when the children of Plaintiff and the Class Members became too old to remain covered as Dependent Children under the Plan.

127.    By retaining dependent life insurance premium payments despite not being entitled to retain them, converting them to their own use, and invested them for their own benefit, Defendants Sun Life and USIC dealt with the assets of the Plan for their own interest and their own account.

128.    By retaining the dependent life insurance premium payments for Plaintiff's children after they became too old to qualify as Dependent Children under the Plan, Defendants Sun Life and USIC Life received consideration for their own personal account in connection with a transaction involving assets of the plan within the meaning of ERISA § 406(b)(3).

129.    By virtue of the violations set forth in the foregoing paragraphs, Defendants Sun Life and USIC engaged in prohibited transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106 for which they are subject to a surcharge, liable to disgorge the profits, as well as any other remedial or appropriate equitable relief.

**COUNT VI**
**CO-FIDUCIARY LIABILITY PURSUANT**
**TO ERISA § 405(a), 29 U.S.C. § 1105(a)**
**AGAINST SUN LIFE AND USIC ON BEHALF OF THE CLASS**

130.    Plaintiff repeats, reaffirms, and realleges the preceding paragraphs of the Complaint as is they were fully restated at length herein.

131.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides that "in addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan:

(1)    if he participates knowingly in or knowingly undertakes to conceal  an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which gave rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

132.    Based on the Answer by Sun Life and USIC for each Welfare Plan insured by a group dependent life insurance policy issued by Sun Life, the Certificate and Summary Plan Description are distributed in the same manner as in the Merakey Plan—Sun Life provides the Certificate and SPD, which are distributed to participants through a designated Administrator.

133.    The Plan Administrators of the Plans in which Class Members participated were fiduciaries within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) either because they were the Sponsor of the Plan and no instrument under which the Plan is operated designates an Administrator of the Plan or because the Plan provides that they were the administrators of the Plan. Additionally, providing information about plan benefits, including information about circumstances that may result in the denial or reduction of plan benefits and collecting premiums, is a fiduciary function under ERISA.

134.    Among the duties imposed by ERISA § 404 is the duty to provide plan participants and beneficiaries with accurate information about the benefits provided by the plan and correctly collecting and transmitting premiums.

135.    By failing to disclose to participant Class Members that they were paying premiums for children who no longer qualified as Dependent Children, failing to advise the Class Members

of their rights to convert the group life insurance to an individual life insurance policy, and by transmitting premiums to USIC and Sun Life for children who no longer met the definition of Dependent Children, the Plan Administrators breached their fiduciary duties.

136.    By accepting premiums for dependent life insurance for children who no longer met the definition of Dependent Children and failing to disclose that they had received such premiums, Defendants USIC and Sun Life participated knowingly in or knowingly undertook to conceal the breaches by the Plan Administrators.  As a result, Defendants USIC and Sun Life violated ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

137.    By failing to disclose that they had received premiums for dependent life insurance for dependent life insurance for children who no longer met the definition of Dependent Children and/or failure to keep or review their records, Defendants USIC and Sun Life failed to comply with the administration of their specific responsibilities under the Plans and enabled the Plan Administrators of the Plans in which the Class Members participated to commit a breach. As result, Defendants USIC and Sun Life violated ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

138.    Upon information and belief, Defendants USIC and Sun Life had knowledge of the breaches of the Plan Administrators with respect to their failure to properly disclose the terms and material facts about the Plan and their collection and transmittal of premiums, but took no efforts to remedy the breach.  As result, Defendants USIC and Sun Life violated ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

139.    As a result of violating ERISA § 405(a)(1)-(3), Defendant Sun Life is liable pursuant to ERISA § 405(a) as a co-fiduciary for the Plan Administrators' breaches.

<u>COUNT VII</u>
<u>REFORMATION OF THE TERMS OF THE</u>
<u>SUN LIFE GROUP POLICY CONTRACT</u>

140.   Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as if they were fully restated at length herein.

141.   Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), reformation is available due to a mutual mistake of fact or inequitable conduct to remedy false or misleading information. *Cigna Corp. v. Amara,* 563 U.S. 421, 440-41 (2011).   Reformation is also available to remedy violations of ERISA "even in the absence of mistake, fraud or other conduct traditionally considered to be inequitable" *Laurent v. Pricewaterhouse Coopers LLP*, 945 F.3d 739 (2d Cir. 2019).   And reformation applies to remedy breaches and violations even when there is no actual harm. *Sullivan-Mestecky v. Verizon Commun. Inc.*, 961 F.3d 91 (2d Cir. 2020).

142.   Inequitable conduct includes intentional fraud, negligent omissions, and concealments of true facts.

143.    By failing disclose to Plaintiff and the other Class Members that it was receiving and retaining premiums for dependent life insurance that Sun Life would contend did not exist, Defendant Sun Life engaged in inequitable conduct and/or breached its fiduciary duties that supports reformation of the terms of its Policies.

144.   By failing disclose to Plaintiff and the other Class Members when Sun Life received premiums for dependent life insurance for children who longer met the definition of Dependent Child that the participant could convert the group life insurance to an individual life insurance policy, Defendant Sun Life engaged in inequitable conduct and/or breached its fiduciary duties that justifies reformation of the terms of its Policies.

145.     By receiving and retaining premiums for dependent life insurance for children who longer met the definition of Dependent Child, Defendant Sun Life engaged in equitable conduct and/or breached its fiduciary duties and violated ERISA in a manner that justifies reformation of the terms of its Policies.

146.     By failing to ensure that Plaintiff and other Class Members received an SPD (or the Group Contract or Plan Document) so that they could understand their benefits under the Plan, including dependent life insurance benefits, and then attempting to apply those terms to deny Plaintiff and other Class Members coverage for their children, Defendant Sun Life engaged in equitable conduct and/or breached its fiduciary duties and violated ERISA in a manner that justifies reformation of the terms of its Policies.

147.     As such, the Sun Life Policies should be reformed so that Plaintiff and other Class Members should receive the dependent life insurance benefits in which they had enrolled and for which Sun Life accepted and retained premiums.

**COUNT VIII**
**PARTICIPATION IN A FIDUCIARY BREACH,**
**PROHIBITED TRANSACTION, OR OTHER VIOLATIONS**
**AGAINST SUN LIFE AND USIC**
**ON BEHALF OF THE CLASS**

148.     Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as is they were fully restated at length herein.

149.     As set forth above, each of the Plan Administrators of the Plans, including Merakey, breached its fiduciary duty to the Plans and its participants, caused the Plans to engage in prohibited transactions and otherwise violated ERISA.

150.     In the event that Sun Life and USIC were not fiduciaries of any of the Plans in which any of the Class Members participated with respect to the premiums received for the

dependent life insurance benefits in which Plaintiff or any other Class Member was enrolled or participated, Sun Life and USIC, jointly and severally, knowingly participated the fiduciary breaches and prohibited transactions of the Plan Administrators of the Plans in which the Class Members participated (and as to Sun Life in USIC's breaches and violations), they are liable for knowingly participating in those breaches and violations by accepting premiums for dependent life insurance benefits that they knew or should have known were not payable under the Plans and converting said premiums to their own use.

151.    Even if Sun Life and USIC did not know or should not have known of the fiduciary breaches and prohibited transactions of the Plan Administrators of the Plans in which the Class Members participated, Sun Life and USIC are liable as gratuitous transferees regardless of whether they knew or should have known that the premiums for dependent life insurance benefits were not payable under the Plan.

152.    By virtue of the violations set forth in the foregoing paragraphs, USIC and Sun Life are subject to appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including a constructive trust over the premiums or the proceeds thereof and to be ordered to disgorge the profits made on such funds.

**COUNT IX**
**FAILURE TO PROVIDE DOCUMENTS REQUIRED**
**BY ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4)**
**PURSUANT TO ERISA § 502(a)(1)(A) AND 502(c),**
**29 U.S.C. § 1132(a)(1)(A) AND 29 U.S.C. §1132(c)**
**AGAINST MERAKEY BY PLAINTIFF INDIVIDUALLY**

153.    Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs of the Complaint as if they were fully restated at length herein.

154.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy

of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the request.

155.    As the Plan Administrator of the Merakey Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), Merakey was obligated to comply with ERISA § 104(b), 29 U.S.C. § 1024(b) as well as ERISA § 404(A)(1), 29 U.S.C. § 1104(a)(1).

156.    On October 2, 2018, Plaintiff made a written request for various Plan documents from Merakey, including the Plan's complete plan document, Summary Plan Description, Form 5500 annual report, Plaintiff's collective bargaining agreement, as well as those other documents under which the Plan is established or operated, in accordance with ERISA § 104(b), 29 U.S.C. § 1024(b).

157.    Merakey had an obligation to fully respond to Plaintiff's request within thirty (30) days of receiving Plaintiff's request.

158.    Despite its obligation to provide a complete set of documents within 30 days in response to Plaintiff's request, Merakey responded to Plaintiff's request on November 6, 2018, but only provided some of the documents in response to Plaintiff's request.  Specifically, Merakey failed to provide any documents referencing any benefits other than the USIC Group Policy.

159.    Among other documents, Merakey failed to provide the Sun Life Group Policy, which was the active group insurance policy in effect at the time of Plaintiff's request and when she first learned that her son was not covered under the Plan as a Dependent Child.

160.    Additionally, the Merakey Plan's Form 5500 indicates that the Plan provides a variety of welfare benefits in addition to life insurance benefits, such as health benefits, dental benefit, vision benefits, temporary disability benefits, and life insurance benefits from insurers

other than USIC and Sun Life. Despite being encompassed by Plaintiff's request, Merakey failed to provide those documents.

161.    By failing to provide all of the documents required by ERISA § 104(b), Merakey has failed to comply with Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4).   Merakey's failure to comply with ERISA § 104(b), 29 U.S.C. § 1024(b), lacks any reasonable or plausible justification, was intentional, and/or was done in bad faith.

162.    Plaintiff has been prejudiced by Merakey's failure to comply with Section 104(b) and her requests by, *inter alia*, not receiving complete and authoritative copies of the Plan documents and SPD to review and use in pursuing her claims against Defendants including while exhausting her claims for benefits.

163.    Pursuant to 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1, the failure to produce the requested documents within 30 days of Plaintiff's request, Merakey, as the Plan's Administrator, is liable for statutory penalties in an amount not exceeding $110 per day for each day that the request remains unfulfilled beyond the 30-day deadline.

164.    Pursuant to 29 U.S.C. § 1132(a)(1)(A), Plaintiff may bring a civil action to obtain the relief authorized by 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1 and is therefore entitled to an award of statutory penalties.

## ENTITLEMENT TO RELIEF

165.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled to sue Defendants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any amounts that may be surcharged against Defendants, the recovery of any profits resulting

from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

166.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue Defendant for appropriate equitable relief to redress the wrongs described above, including a surcharge in the amount of the benefits to be paid, a constructive trust over the premiums, disgorgement of any profits on any premiums to which Defendants were not entitled and other injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants and that the Court award the following relief :

A.    Declaring that Defendants breached their fiduciary duties and engaged in prohibited transactions by collecting, receiving and retaining premiums for children who no longer qualify as dependent children (or otherwise insured) under the Policies, failing to properly disclose the terms of the Policies, and failing to disclose their receipt and retention of premiums for children who no longer met the definition of dependent children (and where not otherwise insured under the Policies;

B.    Enjoining Defendants from collecting, receiving and retaining premiums for children who no longer qualify as dependent children (or otherwise insured) under the Policies;

C.    Reforming the terms of the Sun Life Policies to require that Sun Life pay dependent life insurance benefits for all children for which Plaintiff and Class Members paid premiums and who were deceased prior to the date of final judgment;

D.      Imposing a surcharge on Defendants USIC and Sun Life to pay dependent life insurance benefits for all children for which Plaintiff and Class Members paid premiums and who were deceased prior to the date of final judgment;

E.      Declare a constructive trust over all premiums received by Defendants USIC and Sun Life for children for which Plaintiff and Class Members paid premiums and who were alive as of the date of final judgment;

F.      Requiring Defendants Sun Life and USIC to disgorge any profits that they earned on premiums wrongfully received and retained for children who no longer qualify as dependent children (or otherwise insured) under the Policies;

G.      Require Defendants Sun Life and USIC to provide an accounting of all funds received by Plaintiff and other members of the Class for dependent life insurance benefits from the date their children each turned 19 years old;

H.      Award Plaintiff $110 per day in statutory penalties from November 1, 2018 against Merakey;

I.      Award pre-judgment interest and post-judgment interest; and

J.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

K.      Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

Respectfully submitted,

_____ /s/ Adam H. Garner _____
Adam Harrison Garner (I.D. 320476)
Melanie J. Garner (I.D. 315058)
The Garner Firm, Ltd.
One Penn Center
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

Dated: January 3, 2022

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3rd day of January 2022, a copy of the foregoing was electronically served on all counsel of record via the Court's CM/ECF system:


                                                  /s/ Adam H. Garner
                                      Adam Harrison Garner