**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANTOINETTE LEWIS-ABDULHAADI

     *Plaintiff,*

     v.

UNION SECURITY INSURANCE CO.,
SUN LIFE ASSURANCE COMPANY OF
CANADA, and MERAKEY USA

     *Defendants*

Case No.  21-cv-03805-WB

<u>**ORDER GRANTING
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

This case came before the Court on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 134), Class Counsel's Unopposed Motion for Approval of Attorneys' Fees & Expenses (ECF No. 129) and Plaintiff's Motion for a Class Representative Service Award (ECF No. 128).  The court **GRANTS** the Motion for Final Approval, finally certify the Class, finally approve the Settlement, **GRANTS** the Motion for Approval of Attorneys' Fees & Expenses and **GRANTS** the Motion for a Class Representative Service Award and finds as follows:

**Jurisdiction**

1.     The Court has personal jurisdiction over Plaintiff, members of the Class and Defendants pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e) and subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1), including but not limited to jurisdiction to finally approve the proposed Settlement.

**The Class**

2.      The Class that the Court previously certified by Order dated November 26, 2024,

ECF No. 122, is hereby finally certified for settlement purposes as to Counts I, II, and IV-VIII

pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of

the following Class:

> All participants in an ERISA-covered plan that provided or offered dependent child
> life insurance that is or was insured by Sun Life Assurance Company of Canada
> ("Sun Life" or Union Security Insurance company ("USIC")) at any time from and
> including August 25, 2015 until March 14, 2025 and for which a participant paid
> premiums (or premiums were paid) for at least one child in such dependent child
> life insurance coverage and either (i) had no enrolled children who met the
> definition of dependent child under the policy while such premiums were paid for
> coverage or (ii) had a claim for dependent child life insurance denied because the
> child's age was beyond the oldest allowable age for a dependent child under the
> applicable policy or based on the child's age and because the child was not a full-
> time student; and the beneficiaries of such persons.
>
> Excluded from the Class are (1) any fiduciaries of the Plans with decision-making
> or administrative authority related to the establishment, administration, funding or
> interpretation of the Plan, (2) persons not eligible for benefits under Section IV of
> the Settlement Agreement. Additionally, any person does not meet the requirements
> of Section (ii) of the Class Definition and will be excluded unless (a) Defendants
> identify that person as a Class Member With Denied Claim or (b) the claim for
> dependent child life insurance was denied solely because the child's age was
> beyond the oldest allowable age for a dependent child under the applicable policy
> or a claim denied solely based on the child's age and because the child was not a
> full-time student.

3.      No members of the Class have requested to exclude themselves from the Class.

4.      Pursuant to Rule 23(a)(4) and 23(g), the Court confirms its prior appointment of

Plaintiff Antoinette Lewis as Class Representative

5.      Pursuant to Rule 23(a)(4) and 23(g), the Court confirms its prior appointment of

R. Joseph Barton of The Barton Firm LLP, and Adam Harrison Garner of The Garner Firm, Ltd.,

and Jonathan M. Feigenbaum as Co-Lead Class Counsel.

6.      The Court finds that the Class Representative and Co-Lead Class Counsel have

fully and adequately represented the interests of the Class for purposes of entering into and implementing the Settlement Agreement and have satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure.

**Class Notice**

7.      The Court finds that the Notice of Class Action Settlement was distributed consistent with the terms of the Settlement Agreement and the Court's Preliminary Approval Order dated November 26, 2024, ECF No. 123, and:

      a.      Constituted the best practicable notice to members of the Class under the circumstances of this action;

      b.      Was reasonably calculated, under the circumstances, to apprise members of the Class of: (i) the pendency of this class action; (ii) their right to object to any aspect of the proposed Settlement, including the fairness, reasonableness, and adequacy of the Class's representation by Class Counsel, and the award of attorneys' fees and expenses; (iii) their right to appear at the Final Approval Hearing; and (iv) the binding effect of the orders and Final Judgment as to all claims asserted in this action against Defendants, whether favorable or unfavorable, on all members of the Class;

      c.      Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and

      d.      Fully satisfied the requirements of the Federal Rules of Civil Procedure (including Rules 23(c)(2) and (e)), the United States Constitution, and any other applicable law.

### Final Approval of the Settlement

#### *Rule 23(e) Factors*

8.　　Federal Rule of Civil Procedure 23 requires that a class action "may be settled ...

only with the court's approval." Fed. R. Civ. P. 23(e). This requires a court to "independently

and objectively analyze the evidence and circumstances before it in order to determine whether

the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant,*

264 F.3d 201, 231 (3d Cir. 2001) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank*

*Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)). In determining whether a proposed class

action settlement is fair, reasonable, and adequate, the recently amended provisions of Federal

Rule of Civil Procedure 23 require courts to consider whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length; (C) the relief provided for the class
> is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class,
> including the method of processing class-member claims; (iii) the terms of any
> proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The factors set forth in Rule 23(e)(2) augment, rather than replace, the

traditional factors developed by courts to assess the fairness of a class action settlement. Courts

of the Third Circuit applying this amendment to Rule 23 have thus held that these newly

enumerated factors "augment, rather than replace" the *Girsh* and *Prudential* factors. *Caddick v.*

*Tasty Baking Co.*, No. 2:19-CV-02106-JDW, 2021 WL 4989587, at *4 (E.D. Pa. Oct. 27, 2021);

*see Somogi v. Freedom Mortg. Corp.*, 495 F.Supp.3d 337, 350 (D.N.J. 2020) (separately

analyzing Rule 23(e)(2), *Girsh*, and *Prudential* factors.). For the reasons discussed below, the

Court finds that the Settlement Agreement is fair, reasonable, and adequate to the Class pursuant

to Fed. R. Civ. P. 23(e).

A.    *Adequate Representation*

9.    Federal Rule of Civil Procedure 23(g) sets forth the factors to evaluate counsel's adequacy including work done in identifying or investigating claims in the action and counsel's experience handling class actions, other complex litigation, and the types of claims in the action. *Sheinberg v. Sorenson,* 606 F.3d 130, 132 (3d Cir. 2010) (finding the Rule 23(g) factors govern adequacy of counsel). Class Counsel have significant experience litigating class action ERISA cases. ECF No. 55-2 ¶¶ 8-9; ECF No. 55-5 ¶¶ 5-6; ECF No. 55-14 ¶¶ 2-4. Plaintiff and Class Counsel have litigated vigorously on behalf of the Class since initiating the litigation more than three years ago and have spent more than 2,350 hours litigating this case. ECF No. 129-6. Plaintiff Lewis is qualified to adequately represent the Class.

B.    *Arm's Length Negotiations*

10.    The Court finds the Settlement Agreement was the result of an adversarial, non-collusive, and arms-length negotiation. ECF No. 123 ¶ 3. The Settlement Agreement is the result of arm's length negotiations that extended over several months and included four separate sessions with an impartial mediator with extensive experience in ERISA class action matters. The assistance of a professional mediator reinforces that the Settlement Agreement is non-collusive. *See Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Rose v. Travelers Home and Marine Ins. Co.*, No. 19-977, 2020 WL 4059613, at *7 (E.D. Pa. July 20, 2020) (quoting *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3, 2016)). The parties held multiple rounds of mediation with an experienced, professional

mediator, Hunter Hughes. Agmt. at Recital G. The parties negotiated the settlement agreement over the course of four separate days across several months. *Id.*; ECF No. 123 ¶ 3.

### C.    *Adequate Relief*

11.    The Court concludes that the relief provided for the Class is adequate. The settlement provides substantial relief to the Class and falls within the range of reason. In summary:

a.    For those Class Members with Denied Claims that were previously denied (Group 1), Sun Life will pay (a) 100% of dependent child life insurance benefits for claims denied because the child's age at the time of death was beyond the oldest allowable age for eligibility of a dependent child under the applicable policy, and (b) 50% of dependent child life insurance benefits provided by the group policy for claims denied based on the child's age and because the deceased child was not a full-time student (i.e. the child was of an age that if they were a full-time student their age alone would not have been disqualifying under the policy).

b.    For Class Members whose child died or dies on or after August 25, 2015 and for 10 years after the end of the Class Period (i.e. after the Final Approval Hearing) and whose claims were not denied during the Class Period (Group 2), Sun Life will pay 100% of dependent child life insurance benefits under the applicable group policy for Covered Decedents without considering the child's age (so long as the child is not 40) so long as premiums have been paid for at least 6 months.

c.    For Class Member(s) Without Eligible Dependent Children (Group 3), Sun Life will offer those Class Members the option to purchase an individual policy of conversion life insurance for each child who did not satisfy the definition of dependent

child under the applicable policy while premiums were being paid for dependent child life insurance coverage under a USIC or Sun Life group policy, subject to certain conditions in the Settlement Agreement.

   d. As of the date of this Order, payments on the previously denied claims will be approximately $620,250, which is more than 72% of the maximum value that could be obtained. These Class Members who had a claim denied will receive either a 50% or 100% recovery. Class Members who have not yet had a claim denied but whose children have died or die during the next 10 years will receive 100% of benefits. To date, another 40 persons have submitted such Notice of Potential Claim and the period to submit such claims will not expire until mid-July 2025. Ehm Suppl. Decl. ¶ 20. Recoveries of 50% or 100% significantly exceed the results achieved in many other complex class action lawsuits approved in this jurisdiction. *Cunningham v. Wawa, Inc.,* No. CV 18-3355, 2021 WL 1626482, at *6 (E.D. Pa. Apr. 21, 2021) (finding ERISA settlement that represents 18.0% of the best possible outcome for the Class Members and 28.1% for the Subclass Members were "in line with other approved settlements"); *Stevens v. SEI Invs. Co.,* No. CV 18-4205, 2020 WL 996418, at *6 (E.D. Pa. Feb. 28, 2020) (finding ERISA settlement that provided more than 31% of the maximum proposed loss "compare[d] favorably to other class action settlements."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) (approving monetary settlement of 5.2% to 8.7% of best possible recovery for class members); *see also Alderfer v. Clemens Markets, Inc. Ret. Sav. & Profit Sharing Plan 003,* No. CIV.A. 10-4423, 2012 WL 12292160, at *7 (E.D. Pa. Apr. 19, 2012) (finding settlement providing for $642,500 to be distributed to the class, less 30% in attorneys' fees, $28,000 in expenses and $5,000

incentive award – or $416,000 net – was reasonable).[1]

      e.      All costs of the administration of the Settlement will be borne by Defendants rather than being deducted from a settlement fund or assessed against Class Members, which differs from some ERISA settlements and provides an added benefit. *E.g. Alderfer*, 2012 WL 12292160, at *1 (approving payment of $21,500 in settlement administration expenses out of the Fund). Instead, this constitutes an additional benefit *See Hurtado v. Rainbow Disposal Co.*, No. 817CV01605JLSDFM, 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (approving settlement and describing settlement term that Class Members will not bear the costs of receiving their distributions as an "additional benefit").

    12.    The Court also finds the expected relief for Class Members is adequate considering the four factors listed in Rule 23(e)(2)(C).

      a.      *Costs, risks, and delay of trial and appeal.* The Settlement Agreement provides a number of Class members with most of what they could have received if Plaintiff, on behalf of a certified Class, successfully proceeded to judgment. ECF No. 117-1 at 4; Agmt. § IV. Here, if the parties had not reached a settlement, Plaintiff would have faced risks in continuing the litigation. Because of the complex and difficult disputed issues presented in this case, continued litigation posed significant risks both in terms of the relief that could have been achieved through trial and judgment and the time

---

[1] Numerous courts have approved settlements in ERISA cases recovering far less. *E.g., Sims v. BB&T Corp.,* No. 1:15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614-JLS-JCG, 2018 WL 8334858, at *7 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,* No. 16-cv-03698-NC, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model).

spent on the litigation. ECF No. 129-2 ¶¶ 15-16.

  b. *Effectiveness of proposed method of distributing relief to the Class.* The Settlement Agreement provides that Class Members who previously submitted a claim for dependent child life insurance benefits that was denied between August 25, 2015 and the Final Approval Hearing and which was denied based on the child's age do not need to take any action to receive a payment (other than to update contact information to provide beneficiary information if necessary). ECF No. 117-4. Class Members whose child passed away between August 25, 2015 and the Final Approval Hearing but did not previously submit a claim for child life insurance benefits must submit a claim to receive benefits (as all other claimants for benefits do). *Id.* Class Members who paid premiums for a child who was above the allowed age for dependent child life insurance and their child is still alive, may convert the life insurance to an individual policy for each such child by submitting a Notice of Interest in Conversion Coverage. *Id.*

  c. *Terms of proposed award of attorney's fees.* The amount of attorneys' fees and expenses will be determined by the Court. The amount sought by the requested attorneys' fee and expense award is reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The fee award does not decrease the benefit available to the class, and no class members have objected to the proposed fee and expense award after having received notice of the amount requested.

  d. *Side Agreements*. The only side agreement identified by the parties is a supplemental stipulation that clarifies and expedites the procedures for Group 2 class members to submit claims, which this Court also approved. *See* ECF No. 135

**D.**    *The Settlement Agreement Treats Class Members Equitably*

13.    Here, the Settlement Agreement contemplates differential treatment that is based on legitimate considerations. Specifically, Class Members with Denied Claims based on age will receive 100% if they exceeded the maximum age because Plaintiff claims that Defendants should have been able to readily ascertain if a child exceeded the maximum age and 50% if the denial was based on age but the child could have been eligible as a full time student because the child was still under the maximum age, it would be more difficult for Defendants to ascertain if the deceased remained a full time student. Agmt. § IV.1.

14.    Class Members who did not have a child die but paid premiums for ineligible dependents will have the right to elect individual conversion life insurance. *Id.* § IV.4. The Settlement provides those Class Members with a valuable benefit that they lost the opportunity to exercise that option. McTeague Decl. ¶ 5. This benefit is beneficial considering the likely *de minimis* monetary value of any claim to a refund and the lack of medical underwriting on a conversion policy. It is particularly valuable for children with medical issues who are unlikely to be able to obtain individual life insurance on the open market. McTeague Decl. ¶ 6. To date, 63 Class Members have submitted a Notice of Interest in Conversion. Ehm Suppl. Decl. ¶ 21.

15.    As these differences in treatment are rationally based on legitimate considerations and there is no indication of any collusion, they do not represent undue favor to a portion of the Class.

**<u>Girsh Factors</u>**

16.    In the Third Circuit, courts must continue to analyze the factors propounded in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risk of maintaining the class through trial; (7) the ability of

the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of the attendant risks of litigation. *In re Nat'l Football League*

*Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d 2016). "A court may approve a

settlement even if it does not find that each of these factors weighs in favor of approval." *In re*

*N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

a.      *Complexity, Expense, and Likely Duration of the Litigation.* Because

continued litigation would likely be lengthy and expensive, settlement is reasonable.

Without the Settlement, the parties would likely have faced several additional years of

litigation, including appeal from any decisions on the merits. The factual and legal issues

in this dispute were hard-fought and complex as illustrated by the arguments made by

Sun Life in defending this case. ECF No. 56. Sun Life has vigorously denied any liability

to Plaintiff or the Class. ECF No. 120. The Settlement was reached after obtaining

sufficient discovery in advance of any settlement discussions and as the result of lengthy

arm's length negotiations aided by a professional mediator. Agmt at Recital ¶¶ E & G. In

light of the complex and difficult disputed issues, continued litigation would likely have

taken years. Defendant would have likely moved for summary judgment on some or all

of the issues in this case. Trial would have been complex, and the non-prevailing parties

would certainly have taken an appeal.

b.      *Reaction of the Class to the Settlement.* Any member who wished to object

to the Settlement or otherwise be heard concerning the Settlement had to file an objection

in writing, bearing a postmark no later than March 3, 2025. ECF No. 123 ¶ 16. The

Settlement Administrator received no objections to the Settlement by the deadline, no

requests for exclusion from the settlement, and no notices of intention to appear at final

approval hearing. Ehm Suppl. Decl. ¶ 23. The Settlement Administrator received one

email styled as an objection that submitted after the deadline, but that objection has

subsequently been withdrawn.

   c. *Stage of the Proceedings and Amount of Discovery Completed.* This suit

has been litigated for more than three years. Agmt. at Recital A. From about January

2022 to August 2023, the Parties engaged in discovery during which Plaintiff served

interrogatories, requests for production of documents, and requests for admission to

Defendants. Agmt. at Recital E. Plaintiff also issued subpoenas to produce documents to

non-parties, including many plan administrators of ERISA-covered welfare plans insured

by USIC or Sun Life. *Id.* Plaintiff also took seven depositions, including the depositions

of Sun Life and USIC by four separate Rule 30(b)(6) representatives, a deposition of a

Merakey benefits department representative, and two expert witnesses designated by

USIC and Sun Life. *Id.* USIC and Sun Life deposed Plaintiff and an expert designated by

Plaintiff. *Id.* During discovery, Defendants produced claim files (including benefit

claims, claim denials, and if applicable, appeals and appeal denials) for at least 28

participants in an ERISA-covered plan that provided or offered dependent child life

insurance that is or was insured by Sun Life or USIC. *Id.* at Recital H & I. The claim files

produced during discovery consisted of files for those participants who submitted claims

for benefits involving a dependent child insurance for which the claim for benefits was

denied on or after August 25, 2015 because the child's age was beyond the oldest

allowable age for a dependent child under the applicable policy. *Id.* All parties had a full appreciation of the merits of this suit before negotiating the Settlement Agreement.

      d.    *The Risks of Establishing Liability and Damages.* The Settlement Agreement provides a number of Class Members with most of what they could have received if Plaintiff, on behalf of a certified Class, successfully proceeded to judgment. ECF No. 117-1 at 4; Agmt. § IV. Here, if the parties had not reached a settlement, Plaintiff would have faced risks in continuing the litigation. Because of the complex and difficult disputed issues presented in this case, continued litigation posed significant risks both in terms of the relief that could have been achieved through trial and judgment and the time spent on the litigation. ECF No. 129-2 ¶¶ 15-16

      e.    *The Risk of Maintaining the Class Action Through Trial.* At the time that settlement was reached, no class was certified. As such, there whether a class would be certified or whether it would include all the persons included in the settlement.

      f.    *The Ability of Defendants to Withstand a Greater Judgment is Neutral.* Plaintiff reached the Settlement based on the strengths and weaknesses of the case without regard to Defendants' ability to pay the full amount of a greater judgment. There does not appear to be a question that Defendants could withstand a greater judgment. This factor is neutral.

      g.    *The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and all Attendant Risks of Litigation.* The Settlement provides substantial relief to the Class.

         i.  Class Members who had a child die and a claim denied will receive 100% of the benefits if the child was above the maximum allowable age for a

dependent child under the policy or 50% if the denial was based on age, but the child was still below the maximum age if the child had been a full-time student. Agmt. § IV.1. For Class Members who have a child die in the 10 years following the Final Approval Hearing, Defendants will pay 100% of the dependent child life insurance benefits without considering the age of the child (so long as the child is under 40). *Id.* § IV.2. For Class Members who did not have any children die, but paid premiums for dependent child life insurance on ineligible children, Sun Life will offer those Class Members the option to purchase an individual policy of conversion life insurance for each such child. *Id.* § IV.3.

ii.  The maximum recovery for the 99 Class Members with previously denied claims would be more $843,000.00. *See* ECF No. 136 (Barton Suppl. Decl.) ¶ 5. Those 99 Class Members with denied claims will receive 50% or 100% of the benefits to which they were entitled. Agmt. § IV.1, 2. On an aggregate basis, those Class Members will receive $620,000 or a more than 73 % aggregate recovery. ECF No. 136 (Barton Suppl. Decl.) ¶ 5. Those Class Members will not need to do anything to receive payment. Defendants will simply send them a check.

iii.  To date, an additional 40 class members have submitted a notice of potential claim.  ECF No. 136 (Barton Suppl. Decl.) ¶ 56.  And the deadline to file such a claim is not until at least July 16, 2025. Agmt § IV.2.b.

iv.  Class Members whose children die within the next ten years but whose claims would otherwise have been denied as ineligible based on exceeding the maximum age will likewise receive 100% of their benefits so long as they file

a claim (just as those who previously filed claims and had them denied did). *Id.* §
IV.3. Assuming that the claims rate (and the amount of benefit payment) remains
the same over the next 10 years and using the average claim amount of $8,515 for
the past 9.5 years and the average number of claims per year of 10.4, that would
result in Defendants paying an estimated $ 88,557.57 each year for the next 10
years (after Final Approval) or an additional $ 885,575.75. ECF No. 136 (Barton
Suppl. Decl.). ¶ 5. The total estimated payments for claims as a result of this
settlement (i.e., considering the previously denied claims and potential future
claims) will be more than $1.5 million to persons whose claims would otherwise
have been denied. *Id.* That estimated amount does not include the 40 persons who
have submitted a Notice of Potential Claim.

     v.  As to Class Members who no longer have Eligible Dependent
Children, but did not have a child die, the Settlement provides them with the
ability to elect conversion insurance coverage. Agmt. § IV.3. Without this
Settlement, these Class Members missed their window under their policies to elect
conversion coverage (likely because, among other reasons, they believed that their
children were, in fact, still eligible for coverage under the policy). Restoring that
ability is a valuable right for multiple reasons, including because unlike individual
coverage purchased on the open market, this conversion right will not be subject
to individual medical underwriting. McTeague Decl. ¶ 6. These policies are
approved by state insurance regulators. *Id.* ¶ 9. The premiums stay the same for
the life of the policy, the policies have a cash value (albeit small given the small
amount of the death benefit) and there is some ability to take loans on the cash

value. *Id.* ¶ 8. The value of this claim is further evidenced by the 124 class

members who have submitted notice of intent for conversion coverage.   ECF No.

136 (Barton Suppl. Decl.) ¶ 6. And the deadline to file such a claim is not until

July 12, 2025. Agmt. § IV.3.c.

vi.    The only other harm suffered by these Class Members (i.e. those

who did not have a child die) is having paid premiums for non-existent coverage.

But the monetary recovery for many such Class Members would be small and

likely considered *de minimis* under any class action allocation plan. The Third

Circuit has expressly recognized the need to establish certain "*de minimis*

thresholds for payable claims" in class action settlements because those

minimums "are beneficial to the class as a whole since they save the settlement

fund from being depleted by the administrative costs associated with claims

unlikely to exceed those costs." *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 328 (3d

Cir. 2011) (approving class action settlement with a $10 or $25 minimum

payment threshold for any class member to receive payment). For some

settlements, including ERISA class actions, the minimum recovery amount has

been higher – either $25 or $50 – due to the complexity and cost of administering

the settlement. *E.g. In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2022 WL

3042766, at *3 (E.D. Pa. Aug. 2, 2022) (requiring $25 minimum distribution to be

paid to the class member); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463

(E.D. Pa. 2008) (approving ERISA class settlement plan with $50 minimum

payment). Not only did Defendants have an argument based on the terms of the

policies that they should not have to refund more than 12 months of premium, but

a Class Member would likely have had to pay more than one year's worth of premiums or more if the settlement was less than 100% (which is likely) to exceed an amount considered more than *de minimis* and therefore receive any payment. For Class Members who elected a smaller benefit (i.e., $1,000 or $5,000), their premiums would have been less than Plaintiff (who had $10,000 in coverage) and they would have had to have paid premiums for even longer to receive a payment that was more than *de minimis*.

17.    Based on the monetary payments in this settlement alone, the percentage of recovery significantly exceeds the recoveries in other class settlements approved in this Circuit.

**Attorney's Fees and Costs.**

18.    Under the Federal Rule of Civil Procedure, "[i]n an action certified as a class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). With respect to fees and costs, the Settlement Agreement required Sun Life/USIC to pay $1 million into an escrowed Fees & Expense Fund out of which any award of attorneys' fees and litigation expenses would be paid. Agmt. § VII.1.

19.    The lodestar method is more typically applied in statutory fee-shifting cases because it allows courts to "reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005); *Dungee v. Davison Design & Dev. Inc,* 674 F. App'x 153, 156 (3d Cir. 2017) (finding district court did not err in applying lodestar to assessing fee in class action based on statutory fee).

20.     "When a court applies the lodestar method to award fees in a class action case that involves a fee-shifting statute, there is "a 'strong presumption' that the lodestar represents the 'reasonable' fee," for class counsel's work." *Id.* at 156 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).  The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 305. The resulting figure is the lodestar amount, which is a "presumptively reasonable fee" for counsel's services. *Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 n.5 (3d Cir. 2002).

21.     A lodestar multiplier of less than one is "strong evidence that the requested fees are reasonable." *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. CV163087-MASLHG, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022). When the lodestar is less than one, this "reveals that Class Counsel's fee request constitutes only a fraction of the work they billed." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009).

### *Reasonableness of Hours Expended*

22.     Class Counsel has submitted detailed time records showing that they spent a total of 2,351.20 hours on this litigation, resulting in a lodestar of $1,723,078.00. In other complex ERISA cases that have settled at similar stages of litigation and in a similar time period of litigation, courts have concluded that similar hours were reasonably expended. *Pfeifer v. Wawa, Inc.,* No. 16-497, 2018 WL 4203880, at *13 (E.D. Pa. Aug. 31, 2018) (finding 2,700 hours were reasonably expended during 2 years of litigation);  *Sweda v. Univ. of Pa.*, No. 16-4329, 2021 WL 5907947, at *7 (E.D. Pa. Dec. 14, 2021) (noting that counsel in an ERISA class action expended 8,144 hours in four years of litigation); *In re Schering-Plough Corp. Enhance ERISA Litig.*, C.A.

No. 08-1432 DMC JAD, 2012 WL 1964451, at *8 (D.N.J. May 31, 2012) (finding expenditure of 4,640 hours by class counsel reasonable in ERISA fiduciary breach class action). These hours include time spent investigating the claims of the Class, drafting the Complaint, engaging in significant discovery, including 7 depositions, filing motions and briefing on class certification (twice) and multiple briefs on standing, preparing for and appearing at four mediation sessions, drafting and negotiating the Settlement Agreement (twice), and drafting motions for preliminary approval (twice) and overseeing administration of the settlement. ECF No. 129-2 ¶ 10, ECF No. 129-3, ECF No. 129-4; ECF No. 129-9 ¶ 39, ECF No. 129-11; ECF No. 129-14 ¶ 60, ECF No. 129-15. In sum, the number of hours billed by Class Counsel is reasonable given the length and history of the litigation.

### *Reasonableness of Rates*

23.     "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation," but there is an exception to this "forum rate rule" where "the need for the special expertise of counsel from a distant district is shown." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (cleaned up). Complex cases arising under ERISA "demand[] a quality of service for which relatively expensive representation is to be expected." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F.Supp. 445, 478 (E.D. Pa. 1995) (awarding fees based on hourly rates "albeit expensive" are reasonable compared to the standard rates "in complex class actions"); *see Cunningham*, 2021 WL 1626482, at *8 (finding class counsel's "hourly rates are reasonable in light of the complexity of this ERISA action and the skill and experience of counsel").

24.     Class counsel's hourly billing rates are reflective of the skill and experience of the lawyers involved. These rates range from $200-285 per hour for paralegals (depending on

experience) and $400-$650 per hour for associates and $700 to $995 per hour for partners and counsel. They are also supported by declarations of attorneys in the Philadelphia area.

25.     Other courts, including those in this Circuit, have approved Class Counsel's customary hourly rates in complex ERISA litigation. *Cunningham*, 2021 WL 1626482, at *8 (approving customary rates of $235-875 per hour for the attorneys affiliated with Mr. Barton's firm "in light of the complexity of ERISA cases and the skill and experience of counsel"); *Campbell v. Royal Bank Suppl. Exec. Retirement Plan*, 646 F.Supp.3d 629, 643 (E.D. Pa. 2022) (approving Mr. Garner's then-hourly rate of $550 per hour);

26.     The rates sought here by Class Counsel are also consistent with fee award using local hourly rates (when those rates are adjusted for inflation). *Taha v. Bucks Cnty. Pa.*, No. CV 12-6867, 2020 WL 7024238, at *9 (E.D. Pa. Nov. 30, 2020) (Beetlestone, J.) (determining that hourly billing rates ranging from $100 per hour to $775 per hour are reflective of the prevailing market rate in this District for class actions as well as the skill and experience of the lawyers involved).

27.     The requested fees exceed the lodestar even using the Attorney Fee Schedule of the Community Legal Services of Philadelphia, Inc. ("CLS"), which the Third Circuit has found as "being well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (quotations omitted). Even using the two-year old CLS rates as the 2025 local rates, the lodestar would still be more than $1.4 million.

28.     In sum, Class Counsel's hourly rates and requested fees are reasonable, especially given that counsel will be compensated for only a fraction of the time it spent pursuing these claims on behalf of the Class. Even subtracting from the lodestar – whether calculated using Class Counsel's hourly rates (i.e. $1.7 million or local rates ($1.4 million) – the $65,000 that

Class Counsel received from the settlement with Merakey, the lodestar will exceed the amount of attorneys' fees to be paid under the Settlement.

**Reimbursement of Expenses.**

29.     Class Counsel are entitled to reimbursement of expenses that were appropriately incurred in the prosecution of the case. *In re Healthcare Servs. Grp., Inc. Deriv. Litig.,* No. 2:20-cv-03426-WB, 2022 WL 2985634, at *16 (E.D. Pa. July 28, 2022) (quotations and citations omitted) (Beetlestone, J.); *see In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. at 192 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund"). Class counsel has identified expenses which total of $77,052.84 and comprise costs associated with, among other copying, attorney travel, consulting experts, process servers, court reports, deposition transcripts, and mediation fees. Payment of these costs will not decrease the benefits obtained for the class. These expenses were necessary for Class Counsel's competent handling of this case, and are reasonable. Plaintiff's proposed expense award shall be granted.

**Award of Attorneys' Fees & Expenses**

30.     The Court award the following amounts to Class Counsel to be paid out of the Fees & Expense Fund:

   a.  $ 77,052.84 to Class Counsel for litigation expenses

   b.  The balance of the Fund (approximately $ 1,002,888.10), *see* ECF No. 129-2 ¶ 27, after deducting the amount awarded for litigation expenses and the Class Representative Service Award, or approximately $920,835.26 is awarded as attorneys' fees.

**Class Representative Service Award.**

31.     Plaintiff requests a $5,000 service award for Class Representative Lewis. The

Third Circuit has expressly authorized service awards to class representatives. *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 333 n.65 (3d Cir. 2011). There is no definitive set of factors to determine whether a service award is appropriate. Courts often consider some variation of the following factors: "(1) the risk involved for the named plaintiff in pursuing the litigation; (2) any personal difficulties suffered by the named plaintiff in light of the litigation; (3) the duration of the litigation; (4) the degree of the named plaintiff's personal involvement in the litigation; and (5) the named plaintiff's personal benefit solely in his capacity as a member of the class." *Taha*, 2020 WL 7024238, at *9 (Beetlestone, J.); *Koertge v. LG Elecs. USA, Inc*., No. 2:12-CV-06204, 2013 WL 12156331, at *2 (D.N.J. Dec. 3, 2013) (using a four-factor test). In this Circuit, such awards have ranged up to $30,000. *Craig v. Rite Aid Corp.,* No. 4:08-CV-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013) (citing cases); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 285 (3d Cir. 2009) (finding no error in approving a settlement that included a $10,000.00 incentive award for each class representative). Here, these factors support a service award of $5,000 for Ms. Lewis.

32.     As Ms. Lewis is the *only plaintiff, "*there would be no benefit to the Settlement Class Members if Plaintiff had not stepped forward and prosecuted this matter to the current resolution." *Stevens v. SEI Invs. Co.,* No. CV 18-4205, 2020 WL 996418, at *14 (E.D. Pa. Feb. 28, 2020). Ms. Lewis's efforts unquestionably have benefited the class. Only as a result of her efforts and that of her counsel, the Class will share in a settlement of substantial value (and one that will <u>not</u> be reduced by attorneys' fees and litigation expenses). Settlement Agreement (ECF No. 117-3) § VII. No class member has objected to Lewis' proposed service award. As a result, Plaintiff will be awarded a $5,000 service award to be paid out of the Attorneys' Fees & Expense Fund.

**Releases.**

33.      The Releases contained in the Settlement Agreement are expressly incorporated herein as follows:

      a.      The Plaintiff and the Class will be deemed conclusively to have released and waived any and all Settled Class Claims against Defendants as provided in the Settlement Agreement.

      b.      The Defendants will be deemed conclusively to have released and waived any and all Claims against Plaintiffs and the Class as provided in the Settlement Agreement.

      c.      Consistent with Paragraph XIII.1 of the Agreement, Plaintiff and the Class will be barred from asserting claims released by Paragraph XIII.1 against any non-Defendant fiduciary of the applicable Plans conditioned on that fiduciary (including for example Plan Administrators) not asserting any claims or challenges against a Class Member, including any claim or challenge regarding any Class Member's eligibility or entitlement to benefits that are provided in the Settlement, including the Plan Administrator(s) providing the Class Notice to Class Members.

      d.      Consistent with Paragraph XIII.3 of the Agreement, Defendants will be barred from asserting any claims described in Paragraph XIII.3 against any non-Defendant fiduciary of the applicable plans conditioned on that fiduciary (including for example Plan Administrators) not asserting any claims or challenges against Defendants arising out of or relating to or based on the same factual predicate of the Amended Complaint and providing the Class Notice to Class Members.

      e.      The Parties and the Class are barred and permanently enjoined from

prosecuting any and all Settled Claims, as provided in the Settlement Agreement, against any Party for whom they have released claims.

34.    **Non-Released Claims.** Neither this Order nor the Settlement releases Claims to enforce the Settlement Agreement.

35.    The Parties and the Class are barred and permanently enjoined from prosecuting any and all Settled Claims, as provided in this Settlement Agreement, against any Party from whom they have released claims.

**CAFA Notice**

36.    Defendants have timely complied with CAFA and provided CAFA Notice consistent with the Settlement Agreement, that notice to the appropriate state and federal officials has been provided as required by CAFA, and that Defendant has satisfied its obligations pursuant to 28 U.S.C. § 1715.

**Approval of Post-Final Approval Notices Required By the Settlement Agreement**

37.    Along with the Motion for Final Approval, the Parties have submitted the following Notices that are to be disseminated after the hearing on Final Approval as required by the Settlement Agreement § IV.4: (a) Reminder Notice to Class Members; (b) Notice to Persons Handling Claim Decisions & Appeals at Defendants; (c) Reminder Notice to Policyholders and (d) Notice by Class Counsel to Certain Attorney Groups. Upon review of those Notices, they are approved and the Parties are directed to issue those Notices at times and manner as required in the Settlement Agreement.

**ACCORDINGLY, IT IS ORDERED** this 20th day of March, 2025 as follows:

38.    Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 134) is **GRANTED** and the settling parties are ordered to carry out the Settlement as provided in the

Settlement Agreement, except that Court will not retain continuing jurisdiction as contemplated by Sections IX.2.k or XV.12 of the Settlement Agreement. Pursuant to Local Rule 41.1, any Party may seek to seek to re-open this case within 90 days of the date that Judgment is entered.

39.    Plaintiff's Motion for Class Representative Service Awards (ECF No. 128) is **GRANTED** and the Court awards a service award of $ 5,000.00 to Plaintiff Lewis to be paid out of the Fees & Expense Fund.

40.    Class Counsel's Motion for Award of Attorneys' Fees and Costs (ECF No. 129) is **GRANTED** and Class Counsel is awarded $ 77,052.84 in expenses to be paid out of the Fees & Expense Fund and the remaining amount of the Fees & Expense Fund as attorneys' fees.

41.    There is no just reason to delay entry of this Order and Final Judgment, and immediate entry by the Clerk of Court is directed pursuant to Rule 54 of the Federal Rules of Civil Procedure. The Clerk of Court **SHALL ENTER** Judgment dismissing this action with prejudice.

S/ WENDY BEETLESTONE

_____
Hon. Wendy Beetlestone
United States District Judge